UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK                                    For Online Publication Only
----------------------------------------------------------------X
ANGELA DIXON,

                Plaintiff,

   -against-                                                                       **MEMORANDUM & ORDER**
                                                                      14–CV–6135 (JMA) (ARL)

FORD MOTOR COMPANY,

                Defendant.
----------------------------------------------------------------X

**AZRACK, United States District Judge:**

       On October 20, 2014, plaintiff Angela Dixon filed this putative class action against defendant Ford Motor Company for breach of express and implied warranties and consumer fraud arising from an alleged defect in 2011 through 2015 model–year Ford Explorers that were leased or purchased in New York (hereinafter the "subject vehicles"). Defendant now moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. For the reasons stated below, defendant's motion to dismiss is granted in part and denied in part.

                                       **I.     Background**

       The following facts are taken from plaintiff's complaint and assumed to be true for the purposes of this motion.

       In October 2012, plaintiff leased a new 2013 Ford Explorer from an authorized Ford dealership in Lynbrook, New York. (Compl. ¶ 14, ECF No.1.) At some point, plaintiff noticed an exhaust odor in the passenger compartment of her vehicle while the vehicle was in use. (Id. ¶ 17.) She notified the Lynbrook dealership of the odor. (Id.) The dealership advised plaintiff to "operate the air conditioning in her vehicle" to limit the odor. (Id.) Plaintiff does not allege that

she operated the air conditioner as directed by the dealership and that this failed to remedy the problem.

Later, plaintiff brought her vehicle to an authorized Ford dealership in Florida. (Id. ¶ 18.) She informed the dealer of the exhaust odor in the passenger compartment. (Id.) Plaintiff does not provide any details about her interaction with this Ford dealership and the dealership's efforts, if any, to repair her car. In particular, plaintiff's complaint does not indicate: (1) when her visits to the dealerships occurred; (2) whether her visits to either dealership were before or after defendant issued the relevant Technical Service Bulletins ("TSBs")[1] discussed below; and (3) whether the dealership performed the repairs or diagnostics as prescribed by the TSBs. After plaintiff visited the Florida dealership, she continued to experience exhaust odor. (Id. ¶ 19.)

At some point, plaintiff discovered that carbon monoxide, an odorless, colorless, and tasteless gas that is toxic to humans, was entering the passenger compartment of the vehicle while the vehicle was in use. (Id. ¶¶ 20–21.) Plaintiff was not notified of this problem when she leased the vehicle nor was she notified that she and all occupants of the vehicle would be exposed to carbon monoxide while driving. (Id. ¶¶ 15–16.) As of the time plaintiff filed her complaint, her vehicle has not been repaired to eliminate the fumes from entering the vehicle. (Id. ¶¶ 19, 22.)

Defendant issued TSB 12-12-4 and TSB 14-0130 in December 2012 and July 2014, respectively, in response to consumer complaints of an exhaust odor in the passenger compartments of the subject vehicles. (Id. ¶¶ 31–32.) TSB 12-12-4 provides instructions to authorized dealerships on how to correct the presence of the exhaust odor in 2011–2013 model vehicles. (Id. ¶¶ 2, 31.) TSB 14-0130 does the same for 2014–2015 vehicles. (Id. ¶¶ 4, 32.) The TSBs did not disclose that passengers might be exposed to carbon monoxide. (Id. ¶ 34.) Although

---

[1] Technical Service Bulletins, or TSBs, are recommended procedures issued by a vehicle manufacturer for the purpose of diagnosing and repairing specific defects that may be found in certain vehicles. (See generally id. ¶ 2.)

2

defendant issued the TSBs to authorized dealerships, defendant did not inform plaintiff or other members of the proposed class of the defects. (Id. ¶¶ 5, 33.)

The TSBs do not identify a specific fix to the exhaust odor problem, but call for various replacements or repairs to several vehicle components. (Id. ¶ 36). Thus, plaintiff alleges that the TSBs suggest that defendant was aware of the defect, but did not know a specific and effective fix to remedy the problem. (Id.) Moreover, plaintiff alleges that the procedures outlined in the TSBs fail to repair the exhaust odor problem and vehicles that have received the repairs outlined in the TSBs may continue to have exhaust and carbon monoxide enter the passenger compartment. (Id. ¶ 37.) Plaintiff further alleges that because of defendant's conduct and inaction, plaintiff and members of the proposed class were exposed to carbon monoxide and exhaust fumes. (Id. ¶ 47.)

According to the complaint, plaintiff and members of the proposed class: (1) unknowingly purchased or leased defective vehicles that cannot be safely operated; (2) have unknowingly been forced to pay, or will pay, substantial amounts of money to repair the vehicles, if a repair can be made; and (3) have had the value of their vehicles diminish due to the defect. (Id.) At the time plaintiff leased her vehicle, she paid a price based upon the value of a defect-free vehicle. (Id. ¶ 48.)

Plaintiff alleges that defendant "designed, manufactured, assembled, inspected, distributed, sold, and leased" the subject vehicles in a manner that rendered those vehicles defective and unsafe for their intended use, by among other things, designing, manufacturing, and assembling the vehicle in a manner that allowed for the exhaust odor to enter the vehicle. (Id. ¶ 26.)

Plaintiff alleges that defendant knew or should have known that the subject vehicles were "dangerous and defective such that drivers and passengers of those vehicles may be exposed to carbon monoxide and other dangerous gases while the vehicles were in operation." (Id. ¶ 27.) As

3

of the date of filing the complaint, defendant has failed to acknowledge that the subject vehicles "contain design flaws and/or defective exhaust and/or HVAC systems that permit exhaust, carbon monoxide, and other potentially dangerous gases into the passenger compartments of those vehicles." (Id. ¶¶ 15, 22.)

Plaintiff alleges that, as the result of the above acts, defendant: (1) breached its express warranty, in violation of the New York Uniform Commercial Code ("N.Y. UCC") § 2-313; (2) breached its implied warranty, in violation of N.Y. UCC § 2-314; (3) violated the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301; and (4) violated the New York Consumer Protection from Deceptive Acts and Practice Act, New York General Business Law ("GBL") § 349.

## II.   Discussion

### A. Standard of Review

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. See Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006); Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, plaintiff must allege sufficient facts "to state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is facially plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). Mere labels and legal conclusions will not suffice. Twombly, 550 U.S. at 555. The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant acted unlawfully." Iqbal, 556 U.S. at 678. In determining the plausibility of a complaint, the Court may consider documents that are "integral" to a complaint as long as: (1) the record is clear that "no dispute exists regarding the

4

authenticity or accuracy of the document"; and (2) it is "clear that there exist no material disputed issues of fact regarding the relevance of the document." Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006).

**B.  Breach of Express Warranty, N.Y. UCC 2-313**

Defendant argues that plaintiff failed to plausibly allege a breach of express warranty claim under N.Y. UCC 2-313 because:  (1) plaintiff failed to identify the terms of the warranty that defendant breached; (2) that defendant never warranted a defect-free vehicle; and (3) the complaint is devoid of factual allegations regarding the alleged breach. (Def.'s Mem. at 10–12, ECF No. 18; Def.'s Reply at 9, ECF No. 25.)

N.Y. UCC § 2-313 governs express warranties.  It states that the seller can create express warranties by affirmation of fact, promise, description, or sample.  N.Y. UCC § 2-313.  To state claim for breach of an express warranty under New York law, a plaintiff must prove "that an express warranty existed, was breached, and that plaintiff had relied on that warranty."  Reed v. Pfizer, Inc., 839 F. Supp. 2d 571, 578 (E.D.N.Y. 2012).  In addition, a successful breach of warranty claim requires that the product be defective.  Id.

Plaintiff identifies two alleged breaches.  However, plaintiff has not stated a plausible claim for either alleged breach.  First, plaintiff alleges that defendant breached an express warranty by leasing plaintiff a defective vehicle.  (Pl.'s Opp'n at 6–7, ECF No. 23; Compl. ¶¶ 60, 63.)  Plaintiff alleges that defendant expressly warranted that its vehicles "were" or "would be" free from defects. (Compl. ¶¶ 28, 63.)  However, the Warranty Guide introduced by Ford explicitly states that "[t]his warranty does not mean that each Ford vehicle is defect free." (Warranty Guide, at 9, Decl. of

5

Timothy Birnbaum, Ex. 2, ECF No. 19-2.) [2]  Because the explicit terms of the Warranty Guide contradicts plaintiff's general allegations about the content of the express warranty, the Warranty Guide governs.  Notably, plaintiff has not offered an interpretation of the actual language in the Warranty Guide that supports her allegations in the complaint concerning the content of the express warranty.  Instead, plaintiff cites to one case, Cox House Moving, Inc. v. Ford Motor Co., No. 06–CV–1218, 2006 WL 2303182, at *2–3 (D.S.C. Aug. 8, 2006), which purportedly supports her position.

Cox, however, contains little analysis and is not persuasive.  In Cox, the complaint alleged that although the warranty expressly provided that the manufacturer will "repair, replace or adjust all parts on vehicles that are defective," the vehicle's defects were "of an inherent and permanent nature" that "cannot be satisfactorily corrected by repairs or replacement of parts to the engine." Cox, 2006 WL 2303182, at *1.  In contrast, plaintiff in this case has not alleged that defendant exhausted its ability to repair or is unable to repair the vehicle.

Second, according to plaintiff, defendant warranted that it "would pay for all repairs and parts to replace any . . . defects" and then breached that warranty by failing to fix the defects in plaintiff's car.  (Pl.'s Opp'n at 6–7; Compl. ¶¶ 60, 63.)  This claim fails because plaintiff has not plausibly alleged that defendant breached this warranty by failing to fix the defects in plaintiff's vehicle.  Plaintiff alleges that she went to a dealership in New York and complained about the odor.  In response, the dealership told her to "operate the air conditioning in her vehicle" to limit the odor.  Plaintiff fails to allege that she did, in fact, operate her air conditioner in the prescribed

---

[2]  Defendant submitted the Warranty Guide as an exhibit to its motion to dismiss.  Although plaintiff did not attach the Warranty Guide to her complaint, the Warranty Guide is integral to plaintiff's complaint and may be considered here.  See Faulkner, 463 F.3d at 134; Sanchez-Knutson v. Ford Motor Co., 52 F. Supp. 3d 1223, 1230 (S.D. Fla. 2014) (finding that although the plaintiff did not attach the Warranty Guide to her complaint, because the Warranty Guide is central to the plaintiff's breach of express written warranty claim and because the plaintiff does not challenge the authenticity of the Warranty Guide, it is appropriate to consider the Warranty Guide on a motion to dismiss).

6

manner. Plaintiff also alleges that, at some point after her initial visit (no relevant dates are provided) she went to a dealership in Florida and once again complained about the odor. However, plaintiff's complaint does not include any other information about her interaction with the dealership in Florida. Notably, plaintiff does not allege that: (1) any repairs, whether pursuant to the TSBs or otherwise, took place when she visited the Florida dealership (or any time thereafter); or (2) defendant refused to perform or was unable to perform any such repairs or replacements. Thus, plaintiff failed to sufficiently allege a breach of any express warranty promising to repair her vehicle.[3]

Plaintiff argues that this Court should follow Sanchez-Knutson, which upheld a breach of express warranty claim on a motion to dismiss on largely similar pleadings. 52 F. Supp. 3d at 1231. Plaintiff, however, overlooks two significant differences between the pleadings in Sanchez-Knutson and those here. In Sanchez-Knutson, the plaintiff specifically alleged that (1) she underwent the TSB repairs/replacements and that the "fix" was unsuccessful, and (2) the Ford dealership was aware of the defect but did not know how to fix it. Id. at 1225. Here, the plaintiff makes no similar allegations.

Accordingly, defendant's motion to dismiss plaintiff's breach of express warranty claim is granted.

## C. Breach of Implied Warranty, N.Y. UCC 2-314

Defendant argues that plaintiff failed to state a claim for breach of implied warranty of merchantability under N.Y. UCC 2-314 because she "leased her vehicle from an independent

---

[3] The Warranty Guide explicitly states that "Ford and its authorized dealers are entitled to a reasonable time and a reasonable number of attempts within which to diagnose and repair any defect covered by this warranty." (Warranty Guide at 9.) Given plaintiff's sparse factual allegations regarding the timing and nature of her visits to the dealerships, plaintiff has not plausibly alleged that, pursuant to the Warranty Guide, she provided Ford with a "reasonable number of attempts" to fix her vehicle.

7

dealer, and is therefore not in privity with defendant, which is required under New York law when seeking to recover only economic damages." (Def.'s Mem. at 7.) Defendant is correct that the general rule in New York is that, absent privity, a plaintiff cannot recover damages for economic loss based upon breach of implied warranty. Miller v. Gen. Motors Corp, 471 N.Y.S.2d 280, 282 (App. Div. 1st Dep't 1984), aff'd, 64 N.Y.2d 1081 (1985); Wade v. Tiffin Motorhomes, Inc., 686 F. Supp. 2d 174, 191 (N.D.N.Y. 2009). Plaintiff, however, contends that there are two exceptions to the general privity requirement: (1) privity is not required when the product is a "thing of danger"; and (2) privity can be satisfied if plaintiff is a third-party beneficiary. (Pl.'s Opp'n at 9–10.) Plaintiff asserts that her claim falls within both exceptions. Plaintiff's arguments are not convincing.

In Hubbard v. General Motors Corp., a federal district court recognized a "thing of danger" exception to New York's general privity requirement for implied warranty claims involving economic loss. 95–CV–4362, 1996 WL 274018, at *5 (S.D.N.Y. May 22, 1996) According to Hubbard, the "thing of danger" exception applies "where an article is of such a character that when used for the purpose for which it is made it is likely to be a source of danger to several or many people if not properly designed and fashioned, the manufacturer as well as the vendor is liable, for breach of law-implied warranties, to the persons whose use is contemplated." Id. at *5 (quoting Goldberg v Kollsman Instrument Corp., 12 N.Y.2d 432 (N.Y. 1963)).

However, the court's analysis of New York law in Hubbard is not persuasive. In interpreting New York law, a federal court sitting in diversity must follow the substantive law set forth by the Court of Appeals. See Calvin Klein Ltd. v. Trylon Trucking Corp., 892 F.2d 191, 195 (2d Cir. 1989). "Where the substantive law of the forum state is uncertain or ambiguous, the job of the federal courts is carefully to predict how the highest court of the forum state would resolve

8

the uncertainty or ambiguity." Travelers Insurance Co. v. 633 Third Assocs., 14 F.3d 114, 119 (2d Cir. 1994); see also Day Zimmermann, Inc. v. Challoner, 423 U.S. 3, 4 (1975) ("A federal court in a diversity case is not free to engraft onto those state rules exceptions or modifications which may commend themselves to the federal court, but which have not commended themselves to the State in which the federal court sits.").

Hubbard, an unreported case, relies almost exclusively on the New York Court of Appeal's 1963 decision in Goldberg, which held that a personal injury plaintiff can bring an implied warranty claim against a manufacturer even in the absence of privity. However, in the more than 50 years since Goldberg was decided, no New York state court has adopted Hubbard's "thing of danger" exception or followed a similar approach in purely economic loss cases.[4] Moreover, post-Goldberg, New York state courts have stressed that Goldberg was a personal injury case and have recognized that the holding in Goldberg "has since been defined and refined." Miller, 471 N.Y.S.2d at 282. Furthermore, although no New York state court has explicitly rejected (or even discussed Hubbard), numerous New York state court decisions have rejected economic loss claims based on a lack of privity in situations where the product at issue was clearly dangerous. See Ofsowitz v. Georgie Boy Mfg., Inc., 647 N.Y.S.2d 887 (N.Y. App. Div. 4th Dep't 1996) (dismissing cause of action for breach of implied warranty against manufacturer of a motor home after motor home caught fire when there were no allegations of personal injury); Adirondack Combustion Technologies, Inc. v. Unicontrol, Inc., 793 N.Y.S.2d 576 (N.Y. App. Div. 3d Dep't 2005) (dismissing cause of action for breach of implied warranty against manufacturer of a boiler where there was no claim for personal injuries).

---

[4] The only New York state court decision to suggest that Goldberg may be applicable outside of the personal injury context is All-Tronics, Inc. v. Ampelectric Co., 354 N.Y.S.2d 154 (N.Y. App. Div.). That case involved a claim for property damage and contains no persuasive analysis discussing the "thing of danger" exception.

Plaintiff argues that, despite the above, this Court should follow Hubbard because a few federal district courts have done so. See Wade, 686 F. Supp. 2d at 191; Doll v. Ford Motor Co., 814 F. Supp. 2d 526 (D. Md. 2011); In re Ford Motor Co. E-350 Van Prod. Liab. Litig. (No. II), No. 03-4558 (GEB), 2010 WL 2813788 (D.N.J. July 9, 2010). These decisions, however, provide little or no analysis explaining why Hubbard was rightly decided. Accordingly, this Court declines to follow Hubbard and its progeny. Instead, this Court concludes that, under New York law, there is no "thing of danger" exception to the privity rule for implied warranty claims that involve purely economic loss.

Next, plaintiff argues that the privity requirement is satisfied because plaintiff is a third-party beneficiary. Some courts have held that a plaintiff can escape the privity requirement under a third-party beneficiary theory. See Praxair, Inc. v. General Insulation Co., 611 F. Supp. 2d 318, 330 (W.D.N.Y. 2009) (stating a claim for breach of implied warranty under New York law against manufacturer when purchaser was not in privity with manufacturer but was a third-party beneficiary of a distribution contract between manufacturer and supplier). According to Praxair, the case cited by plaintiff, a plaintiff who is an intended beneficiary of a contract can be considered the third-party beneficiary of an implied warranty between the contracting parties.[5] Id.; cf. Delgado v. Kornegay, 395 N.Y.S.2d 126, 127 (N.Y. Dist. Ct. Suffolk Cnty. 1977) (finding home purchaser was entitled to recover consequential damages resulting from breach of implied warranty as a third-party beneficiary where defendant termite inspector, who contracted with the home seller, knew the property was in the process of being sold, that his report was for the benefit

---

[5] The Court notes that some courts have declined to apply the third-party beneficiary exception to cases involving only economic loss. See Corson v. Toyota Motor Sales, U.S.A., Inc., No. CV 12-08499, 2013 WL 1802709, at *9 (C.D. Cal. April 24, 2013) ("Under New York law, the implied warranty of merchantability and fitness does not run from a manufacturer to a remote purchase, not in privity with the manufacturer, who has sustained no personal injury but only economic loss."). However, because plaintiff's implied warranty claim does not fall under the third-party beneficiary exception, this Court does not address whether the exception applies to claims seeking to recover purely economic loss.

of the purchaser and, that his report would be relied on by the purchaser).

"Under New York law, a plaintiff claiming rights as a third-party beneficiary must demonstrate: (1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for his benefit and (3) that the benefit to him is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate him if the benefit is lost." Marshall v. Hyundai Motor America, 51 F. Supp. 3d 451, 469 (S.D.N.Y 2014) (quoting State of Cal. Pub. Emps. Ret. Sys. v. Shearman & Sterling, 95 N.Y. 2d 427 (N.Y. 2000)); see also Cullen v. BMW of North America, Inc., 531 F. Supp. 555, 560 (E.D.N.Y. 1982) (finding that distributor and dealer "expressed no intent to confer a direct benefit on ultimate consumers" and "[i]n the absence of such expression, plaintiff assumes the status of an incidental beneficiary, unable to enforce contractual rights or recover for failure to perform contractual duties").

Plaintiff's complaint does not allege sufficient facts to satisfy these requirements. The complaint alleges, in conclusory fashion, that plaintiff was the intended beneficiary of "Ford's written warranties and its contractual relationships with Ford dealerships" and that "Ford's express warranties were designed for and intended to benefit the consumers only." (Compl. ¶ 78.) That is insufficient under Iqbal to state a plausible claim. The complaint does not cite any contractual provisions in the alleged contracts between Ford and its dealerships that indicate plaintiff is a third-party beneficiary of those contracts.[6] Accordingly, under Praxair, plaintiff cannot establish that she is a third-party beneficiary of any implied warranty between Ford and its dealerships, because she has not plausibly alleged that she is the third-party beneficiary of any contract between the parties.

---

[6] In fact, the complaint does not specifically identify any of the relevant contracts between Ford and the dealerships.

11

Finally, plaintiff cites to two decisions applying the laws of other states for the proposition that a purchaser of a vehicle is a third-party beneficiary for purposes of an implied warranty where: (1) the dealerships are the manufacturer's agents; (2) the dealerships were not intended to be the ultimate consumer of the vehicle; (3) the dealerships have no rights under the consumer's express warranty agreement; and (4) the warranty agreement was intended to benefit the consumer only. See Pl.'s Opp'n at 9; Sanchez-Knutson, 52 F. Supp. 3d 1223, 1234 (S.D. Fla. 2014) (applying Florida law); In re Toyota Motor Corp., 754 F. Supp. 2d 1145, 1185 (C.D. Cal. 2010) (applying California law). Plaintiff contends that the analysis in Toyota under California law and the analysis in Sanchez-Knutson under Florida law is consistent with New York third-party beneficiary law as explained in Praxair. This Court disagrees. Praxair does not support these standards and this Court declines to adopt them here. Notably, other than Praxair, plaintiff does not cite any other New York law to support its argument that the standards adopted by the courts in Toyota and Sanchez-Knutson are consistent with New York law.

Plaintiff's claim for breach of implied warranty is dismissed.

**D.  The Magnuson-Moss Warranty Act, 15 U.S.C. § 2301**

Defendant argues that plaintiff failed to state a plausible claim under the MMWA because plaintiff's warranty claims fail. The MMWA allows a consumer to recover damages under existing state law—it does not create additional bases for liability. Diaz v. Paragon Motors of Woodside, Inc., 424 F. Supp. 2d 519, 540 (E.D.N.Y. 2006) ("The MMWA, however, creates no additional bases for liability, but allows a consumer to recover damages under existing state law."). As explained above, because plaintiff has not adequately alleged an express or implied warranty claim under state law, plaintiff's MMWA claim fails.

Therefore, defendant's motion to dismiss plaintiff's MMWA claim is granted.

**E. New York Consumer Protection from Deceptive Acts and Practices Act, GBL § 349**

Defendant contends that plaintiff failed to identify any "material misrepresentations or omissions that could have plausibly misled a reasonable consumer acting reasonably under the circumstances." (Def.'s Mem. at 15.)

Section 349 of the New York General Business Law states that "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service" are unlawful. N.Y. Gen. Bus. § 349(a). "To make out a prima facie case under Section 349, a plaintiff must demonstrate that (1) defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." Maurizio v. Goldsmith, 230 F.3d 518, 521 (2d Cir. 2000) (per curiam) (citing Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, 85 N.Y.2d 20, 25 (1995)). "Whether a representation or an omission, the deceptive practice must be 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" Stutman v. Chem. Bank, 95 N.Y.2d 24, 29 (2000) (quoting Oswego, 85 N.Y.2d at 26).

Defendant only disputes that its acts were misleading in a material way.

    **i.    Misrepresentation**

Defendant argues that plaintiff has not identified any actionable misrepresentations. (Def.'s Mem. at 15.) Defendant argues that plaintiff's conclusory allegations fail to identify any misrepresentations made to plaintiff, or anyone else, and further fails to identify how any misrepresentation was false or likely to mislead a reasonable consumer. (Id. at 16.)

Plaintiff counters that defendant: (1) expressly warranted the vehicle to be defect-free; and (2) expressly warranted that, if there was a defect, the vehicle would be repaired to be defect-free. (Pl.'s Opp'n at 16–17.) Plaintiff maintains that those representations in the express warranty were

13

deceptive because, at the time that plaintiff leased her vehicle, defendant knew (or should have known) of the defect and knew that it could not fix the defect. Plaintiff specifically alleges that "the misleading acts predicated on promises to repair defects and material omissions, among other things, that mislead consumers as to the true, defective, and unfixable nature of the vehicles." (Id. at 17.)

Although plaintiff argues in her opposition that defendant's express warranty contains misrepresentations, the paragraphs in her complaint addressing her GBL § 349 claim are conclusory and do not specifically identify any of those representations as deceptive. Although the GBL § 349 allegations in the complaint generally refer to advertisements or statements that were false or misleading, the complaint never identifies the specific advertisements or statements at issue. (See Compl. ¶ 102.) That alone is reason to dismiss plaintiff's misrepresentations claims. See Woods v. Maytag Co., No. 10–CV–559, 2010 WL 4314313, at *16 (E.D.N.Y. Nov. 2, 2010) (finding general references to advertisements and statements insufficient to allege a deceptive act or practice).

Plaintiff's misrepresentation claims have additional flaws. As explained above, defendant's Warranty Guide did not expressly warrant plaintiff's vehicle to be defect-free. See, e.g., In re MyFord Touch Consumer Litig., 46 F. Supp. 3d 936, 955 (N.D. Cal. 2014) ("The fact that Ford's limited warranty stated '[t]his warranty does not mean that each Ford vehicle is defect free,' . . . does not provide a basis for a claim that Ford made an affirmative misrepresentation that the MFT system was defect free.") Plaintiff also argues that defendant warranted that the vehicle would be repaired to be defect-free. Plaintiff, however, does not cite any specific language from the Warranty Guide to support this argument. Moreover, plaintiff's opposition does not point to any allegations in the complaint that are on point. (See Pl.'s Opp'n at 16 n.94 (citing Compl.

14

¶¶ 28, 102).) As explained above, paragraph 102 of the complaint is conclusory. And, paragraph 28—which alleges that Ford "warranted that the vehicles would be free from defects"—says nothing about repairs.

Finally, even assuming that defendant did warrant that it would repair the vehicles to be defect-free, plaintiff cannot show that the representation implicit in that warranty is misleading because plaintiff has not plausibly alleged that the odor defect cannot be repaired. Plaintiff has alleged, based on information and belief, that the odor defect cannot be repaired. Pleading such an allegation based solely on information and belief is inappropriate where the plaintiff has not even alleged that the TSB was performed on her vehicle and failed to fix the problem.

In light of the above, plaintiff's allegations based on misrepresentations are hereby dismissed.[7]

### ii.    Omission

A plaintiff can state a claim for omission under the GBL where the business alone possesses material information that is relevant to the consumer and fails to provide this information. Oswego, 85 N.Y.2d at 26; Tomassini v. FCA US LLC, No. 14–CV–1226, 2015 WL 3868343, at * 5 (N.D.N.Y. June 23, 2015) (finding, based on Oswego, that an omission-based claim existed); Bildstein v. MasterCard Int'l, Inc., No. 03–CV–9826I, 2005 WL 1324972, at *4 (S.D.N.Y. June 6, 2005) (finding that omission-based claims under GBL § 349 are appropriate where the business alone possesses material information that is relevant to the consumer and fails to provide this information).

---

[7] Plaintiff argues, in a footnote, that the relevant TSBs are actionable as affirmative misleading statements. According to plaintiff, the TSBs misleadingly "suggest" that defendant can fix the defect and that the problem is limited to exhaust odor. (Pl.'s Opp'n at 16 n.94.) The Court declines to consider this argument as it was raised solely in a footnote. Moreover, the GBL § 349 allegations in the complaint do not specifically identify the TSBs as affirmative misleading statements.

15

Plaintiff alleges that defendant failed to: (1) disclose the exhaust defect; (2) failed to inform Ford Explorer purchasers of the defect; and (3) failed to notify these purchasers how to correct the defect. (Pl.'s Opp'n at 16–20.) Plaintiff sufficiently alleges that defendant knew of this defect by, at least, December 2012, and did not notify purchasers of this defect or how to correct it. Defendant issued TSBs to certain dealerships, but did not notify the vehicle purchasers of this potential issue. Although plaintiff leased her vehicle two months before the first TSB was issued in December 2012, it is plausible that defendant knew of the defect two months prior to the TSB's release.

Defendant argues that the warranty specifically states that defendant does not guarantee a defect-free vehicle, thus rendering "[p]laintiff's § 349 omission claim implausible on its face." This argument is not convincing. Plaintiff's omission claim is based on defendant knowingly failing to disclose a defect that was solely within defendant's knowledge. Whether the vehicle was guaranteed defect-free or not is irrelevant because plaintiff's claim is about a distinct deceptive practices—specifically, withholding information. See Zaccagnino v. Nissan North America, No 14–CV–3690, 2015 WL 3929620 (S.D.N.Y. June 17, 2105) ("[Plaintiff] alleges that when he bought his car Nissan was aware, but did not reveal to him, that the 2013 recall had not solved the . . . defect and the defect was present in many vehicles not subject to that recall. That is sufficient to plead that those omissions were materially misleading"); Doll, 814 F. Supp. 2d at 550 (declining to dismiss an omission-based claim where plaintiffs "contend[ed] that Ford misled consumers by withholding material information regarding the defective torque converter, and, as a result, consumers were harmed by high repair and replacement costs.").

Therefore, defendant's motion to dismiss claims asserting a violation of GBL § 349 on an omission theory is denied.[8]

## F. Primary Jurisdiction and Judicial Recall

Defendant argues that plaintiff's requests for a judicial recall under GBL § 349 should be dismissed because there is no private right of action for a violation of the Safety Act and recalls are the exclusive province of the National Highway Traffic Safety Administration. (Def.'s Mem. at 20–23.) Further, defendant argues that if the Court does not find that plaintiff's claims are preempted by the Safety Act, plaintiff's GBL § 349 claim should nonetheless be dismissed under the doctrine of primary jurisdiction. (Id. at 23–25.) Plaintiff, in her opposition states that she does not request a judicial recall and does not seek to assert a private right of action under the Safety Act. (Pl.'s Opp'n at 22.) Accordingly, defendant's arguments regarding the judicial recall are moot. (See Def.'s Reply Br. at 17 n.5.)

### III. Conclusion

For the reasons set forth above, defendant's motion to dismiss is granted in part and denied in part. The Court grants defendant's motion to dismiss plaintiff's express warranty claim, implied warranty claim, Magnuson-Moss Warranty Act claim, and GBL claim to the extent it is based on misrepresentations by defendant. The Court denies defendant's motion to dismiss the GBL claim to the extent it is based on omissions by defendant. The parties shall continue to engage in discovery with respect to the remaining claim.

---

[8] Defendant relies on Henry v. Rehab Plus Inc., 404 F. Supp. 2d 435 (E.D.N.Y. 2005) for the proposition that omission based GBL § 349 claims are only viable if the omission renders other affirmative statements made by a defendant misleading. This Court declines to follow Henry for that proposition. See Tomassini, 2015 WL 3868343, *7 n.3 (finding Henry is contrary to the New York Court of Appeals' decision in Oswego, which considered omission-based GBL § 349 claims and found that plaintiff was not required to identify an affirmative statement made false by the defendant's alleged omission); see also Doll, 814 F. Supp. 2d at 449 n.9.

**SO ORDERED.**

Date: September 30, 2015
Central Islip, New York

                     /s/ (JMA)
                     Joan M. Azrack
                     United States District Judge